## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHELE DONAHUE,                          )
                                          )
                    Plaintiff,            )
                                          )
        vs                                )        Civil Action No. 2:24-68
                                          )
WAL-MART STORES EAST, L.P.,               )        Magistrate Judge Dodge
                                          )
                    Defendant.            )

## MEMORANDUM OPINION

Plaintiff Michele Donahue ("Donahue") asserts a negligence claim against Wal-Mart Stores East, L.P. ("Walmart") for injuries sustained when she slipped and fell in a Walmart store.

Currently pending before the Court is Walmart's motion for summary judgment (ECF No. 28). For the reasons that follow, its motion will be granted.[1]

### I.   Procedural History

Donahue originally commenced an action in the Court of Common Pleas of Indiana County, Pennsylvania in October 2023. Walmart then removed the action to this Court on the basis of diversity of citizenship, 28 U.S.C. § 1332(a). (ECF No. 1.) After other defendants and claims were dismissed, the remaining claim is a single count of negligence against Walmart. (ECF No. 1 Ex. E at 5.)[2]

On March 3, 2025, Walmart filed a motion for summary judgment (ECF No. 28), which has been fully briefed (ECF Nos. 29, 33, 39).

---

[1] The parties have fully consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 7.)

[2] The Complaint named five other defendants and included five counts of negligence, but by stipulation of the parties (Compl. Ex. F) and an order of the state court filed on December 26, 2023 (Compl. Ex. G), those defendants (including two whose presence would have prevented removal) were dismissed.

II.  **Relevant Facts**

On September 4, 2021, Donahue went to a Walmart store in Indiana, Pennsylvania. After entering the store, she first visited the hardware department and then proceeded to the section of the store that sold domestic items such as decorations, pillows, and curtains. She alleges that at approximately 10:37 p.m., she slipped and fell in an aisle as a result of water on the floor.[3] Donahue did not see any liquid on the floor before she fell, she could not specify the amount of liquid, and she could not specify how long the liquid existed on the floor. (Defendant's Concise Statement of Facts ("DCSF") ¶11) (ECF No. 30.) She did not see any Walmart employees in the aisle where she fell before her fall. (*Id.* ¶¶ 1-3, 13.)

The source of any water on the floor was not conclusively determined. According to Donahue, while she did not know where the water came from, it may have come from the ceiling. She based this possibility on an employee's statement after the incident to the effect that: "Oh, it looks like it is coming from the ceiling." (Plaintiff's Response to Defendant's Concise Statement of Facts ("PRDCSF") ¶¶ 1, 4) (ECF No. 37.)

According to Walmart, Donahue's testimony about the alleged substance was limited to indicating is that it appeared to be water and was clear and clean. It notes that she did not see any water leaking from the ceiling, has no factual basis for her suggestion there was a leak in the roof, and no one from the store mentioned possessing any knowledge about any leak. (DCSF ¶¶ 1, 4-5.) Wanda Lorditch, a Walmart employee who was the first person to respond to Donahue's fall, testified that the roof was not leaking at the time of Donahue's incident and she had no knowledge regarding the existence of liquid on the floor where Donahue fell. She heard no one from Walmart

---

[3] Donahue alleges that she sustained serious injuries as a result, including tearing of the meniscus of her right knee which required a knee replacement, anxiety, post-traumatic stress disorder, depression and stress. (Compl. ¶ 23.)

mention the presence of liquid on the floor where Donahue fell. (*Id.* ¶¶ 6-8.)

Donahue asserts that a friend took pictures after the incident which show the presence of liquid on the floor that left a streak after she fell. (PRDCSF ¶¶ 6, 20-23.)

Dean Scott Harkins, a maintenance associate who responded to the incident scene, testified that he saw nothing wet on the floor when he went over to clean the aisle post-incident, and has no knowledge about a leak in the roof. He testified at his deposition as follows:

> Q: What did you do to clean up the aisle?
> A: I mopped where I could really just mop. All of my managers were over there and I was told to clean up the aisle, so I cleaned up the aisle.
> Q: And did I hear your testimony saying you didn't find anything?
> A: I did not.
> Q: Did you see any liquid on the floor?
> A: I did not.

(DCSF ¶ 9.) Harkins inspects the store for debris and spills at least five to six times per night beginning at 10:00 p.m. when he begins his shift. He has never had to clean a spill on the overnight shift in the aisle where the incident occurred. (DCSF ¶ 10.) Harkins was unaware of the origin of any liquid and did not know the length of time it may have been present on the floor. (DCSF ¶¶ 11-12.)

Donahue asserts that Harkins's denial of seeing any water is contradicted by the surveillance video that shows him placing a yellow triangular caution sign in the aisle and mopping the exact area where she fell. (PRDCSF ¶¶ 9, 39.) She adds that the store closes at 11:00 p.m., only one hour into Harkins's shift, and Walmart has produced no evidence of when the aisle was last inspected. (*Id.* ¶ 10.) Harkins testified that he has been asked to clean up spills on the floor of the Indiana Walmart "multiple times," meaning more than ten. (*Id.* ¶ 38.)

The incident was captured on Walmart's video surveillance, which depicts the area of Donahue's fall for the hour before it occurred. It also captures Donahue's fall at 10:37 p.m.

According to Walmart, the video shows that a customer appears to walk through the aisle at 9:49:20 and a second customer is seen walking through the aisle at 9:54:18, both without issue. A third set of customers is seen walking through the aisle at 10:23:06 until they eventually depart at 10:24:00. A fourth set of customers appears in the aisle at 10:24:57 and departs the aisle at 10:26:25, ten minutes before the incident. (ECF 31-8.)[4] Walmart asserts that this is evidence that it did not create any alleged dangerous condition and at any rate, no such condition is visible from the video. (*Id.* ¶ 13.)

According to Donahue, the video does not establish when or how the liquid appeared. On the contrary, she claims that it confirms that no Walmart employee inspected the aisle during the hour before her accident. Thus, Donahue contends, the video supports her claim that Walmart failed to conduct regular inspections of the floors. (PRDCSF ¶¶ 13, 24-25.)[5] Moreover, Walmart does not maintain written logs of aisle inspections and has no record of an inspection of the aisle in question on the day of the incident. (PRDCSF ¶¶ 31-33.)

Joe Lechene, an Asset Protection Coach and Walmart's designated corporative representative, testified that he was unaware of any communications about a possible roof leak, and a review of Walmart documents did not reveal any roof repairs that would suggest the possibility of a leak in the area of the incident. (DCSF ¶ 15.)[6]

---

[4] In its reply brief, Walmart contends that "a closer look at the video shows that what was initially thought to be a customer at 9:49:10-9:49:29, really appears to be an associate pulling a shopping cart and returning items to the shelves in the domestics' section of the store, including the aisle where this incident occurred." (ECF No. 39 at 8.)

[5] The Court has reviewed the video and finds it to be of limited value. It is grainy and taken from a distance. It does show Donahue falling and someone (presumably Harkins) mopping the area afterward. It does not definitively show a spill of any liquid onto the floor or anyone inspecting the area for the hour before Donahue's fall.

[6] Walmart searched for maintenance and repair records and found no reports of a leaking roof in the housewares section of the store. (DCSF ¶ 16.)

Walmart has a strategic maintenance plan for specific areas of the store and for time periods with a high traffic volume. The plan includes requiring employees to conduct safety sweeps throughout the day and address any spills that are found. The plan does not apply to the entire store at all times or to the drapery aisle where Plaintiff fell. Rather, Walmart relies on a "clean-as-you-go" policy for the drapery aisle, which does not mandate timed or routine inspections of each aisle. (PRDCSF ¶¶ 34-37.)

According to discovery produced by Walmart, there were seven slip and fall claims in the Indiana store due to water or wet areas on the floor in housewares, toys, small appliances, electronics, automotive, paper goods and cereal in the five years preceding Donahue's fall. (DCSF ¶ 17.) None occurred in the domestics area. (*Id.*) Walmart also produced discovery responses that identified all "slip and falls" in various store departments, including domestics/housewares, at all nine Walmart stores in the same market area as the Indiana store during the five-year period before Donahue's fall. This revealed eighteen prior slip-and-fall incidents involving water or clear liquid in dry goods aisles at nine stores in the same market area. (*Id.*) There were none that listed the source of the water as a roof leak and only two in five years that occurred in domestics. (*Id.*)

Walmart had an average of over 6,000 daily transactions at the Indiana store in the thirty days preceding the fall and more than 7,200 transactions on the day before the incident. (PRDCSF ¶¶ 29-30.)

## III.  **Standard of Review**

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish any element essential to

that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

## IV.  **Discussion**

Donahue alleges that Walmart was negligent in allowing a dangerous condition of water on the floor to exist during her visit to the Indiana store.

Under Pennsylvania law,[7] "[a] prima facie negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant

---

[7] Pennsylvania law applies in this diversity action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938).

breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." *Krentz v. Consolidated. Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006) (citation omitted). If a plaintiff fails to establish any of these elements, the defendant is entitled to summary judgment. *Novak v. Kilby*, 647 A.2d. 687, 690 (Pa. Commw. 1984).

When a negligence claim is based on a dangerous condition on another person's land, the landowner's liability depends on whether the plaintiff is classified as a trespasser, licensee, or invitee upon the land. *Estate of Swift v. Ne. Hosp of Phila.*, 690 A.2d 719, 722 (Pa. Super. 1997). "A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id.* (citation omitted). "A landowner owes the highest duty of care to any invitee on the property." *Id.* Here, it is undisputed that Donahue was a business invitee.

Pennsylvania courts have adopted Section 343 of the Restatement (Second) of Torts for determining liability when an invitee is injured on the premises. *See Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983); *see also Myers v. Penn Traffic Co.*, 606 A.2d 926, 928 (Pa. Super. 1992), *appeal denied*, 620 A.2d 491 (Pa. 1993). Under Section 343, a possessor of land is subject to liability for harm caused by a condition on the land if it:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) Torts § 343 (1965). "An invitee is entitled to expect that the [business owner] will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition

and the risk involved therein." *Id.* comment d.

At the same time, the mere existence of a harmful condition or the mere happening of an accident is not evidence of a breach of a duty of care nor does it create a presumption of negligence. *Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191, 1193 (Pa. Super. 2015). Rather, as the Pennsylvania Superior Court noted:

> In order to recover damages in a slip and fall case such as this, the invitee must present evidence which proves that the store owner deviated in some way from his duty of reasonable care under the existing circumstances. This evidence must show that the proprietor knew, or in the exercise of reasonable care should have known, of the existence of the harmful condition. Section 343 also requires the invitee to prove either that the store owner helped to create the harmful condition, or that it had actual or constructive notice of the condition.

*Id.* (quoting *Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. 1994)).

A plaintiff can establish liability by showing "either that the proprietor had a hand in creating the harmful condition, or that he had actual or constructive notice of such condition." *Moultrey v. Great A & P Tea Co.*, 422 A.2d 593, 598 (Pa. Super. 1980). "A plaintiff's burden of proving knowledge or notice of the dangerous condition is a heavy one." *Marshall v. Brown's IA, LLC*, 213 A.3d 263, 270 (Pa. Super. 2019).

The parties agree that whether Walmart can be liable in this case turns on whether it had either actual or constructive notice of a dangerous condition in the store.[8] The Court turns thus to the issue of notice.

---

[8] Donahue's Complaint alleged that Walmart may have "had a hand" in creating the condition in that the water came in through a leak in the roof. But as Walmart accurately observes, she has abandoned this theory.

8

A. <u>Actual Notice</u>

A plaintiff may prove actual notice by showing that the store owner was warned about the condition, or that the condition is one which the owner knows has recurred frequently. *Myers*, 606 A.2d at 929 (citing *Moultrey*, 422 A.2d at 596). "Pennsylvania law requires that a plaintiff demonstrate (1) that the dangerous condition occurred frequently and (2) that plaintiff's injury was caused by the frequently recurring condition." *Sheil v. Regal Ent. Grp.*, 563 F. App'x 216, 219 (3d Cir. 2014) (citations omitted).[9]

It is uncontroverted that Walmart did not know and was not warned about any liquid on the floor before Donahue's fall. Instead, Donahue argues that because this condition occurred frequently, actual notice may be imputed. Walmart disputes that actual notice can be imputed to it based on the undisputed facts of record.

In support its theory related to actual notice, Donahue points to seven slip and fall incidents at the Indiana Walmart over the past five years. In doing so, Donahue relies heavily on *Dominiak v. Petsmart, Inc.*, 2023 WL 8810791, at *1 (E.D. Pa. Dec. 20, 2023), a case in which the plaintiff sustained serious bodily injury after falling on a puddle of dog urine in the main aisle of a pet store. In *Petsmark*, there was evidence that dogs urinated on the floor several times every day, the store maintained "oops stations" to deal with frequent cleanups, the floor was monitored for slipping hazards and the store maintained a written procedure for performing periodic visual inspections of the floors throughout the day. Based on this evidence, the court concluded that this was a recurring condition at the store. *Id.* at *4.

---

[9] Donahue's statement that *constructive* notice may be imputed when a dangerous condition is recurring and foreseeable (ECF No. 33 at 4) is incorrect. In addition, her citations to *Bowman v. Wal-Mart Stores E., LP*, 2015 WL 568570 (E.D. Pa. Feb. 10, 2015), and *Cox v. Wal-Mart Stores E., L.P.*, 2008 WL 4072804 (E.D. Pa. Aug. 26, 2008) (discussed below) are not on point, as neither case involved "repeated incidents of the same hazardous condition."

Unlike the situation in *Petsmart*, however, none of the seven incidents over five years occurred in the section of the store in which Donahue fell, an area where there are no sources of water or other liquids. Even assuming there was water on the floor on the day of Donahue's fall, there is no evidence in the record from which an inference could be drawn that it was a recurring and frequent condition in this part of the store, or indeed, in the store itself.

As Walmart notes, "for actual notice to be imputed to a defendant on the basis of a recurring condition, however, such a condition must have recurred in a 'pervasive or obvious' manner." *Mack v. Pilot Travel Centers, LLC*, 2015 WL 9946411, at *8 (citation omitted) (M.D. Pa. Dec. 22, 2015), *report and recommendation adopted*, 2016 WL 374436 (M.D. Pa. Feb. 1, 2016). *See also Derito v. Walmart Stores E., L.P.*, 2020 WL 7059551, at *4 (W.D. Pa. Dec. 2, 2020) (customer's slip on snow which blew into store from malfunctioning door did not provide actual notice as it was not a recurring condition)[10]; *Farina v. Miggys Corp. Five & Six*, 2010 WL 3024757, at *6-7 (M.D. Pa. July 29, 2010) (rejecting argument that actual notice of a piece of pineapple on the floor could be imputed based on the fact that fruit was dropped on the floor on multiple occasions).

Donahue has identified no evidence that Walmart knew about the presence of water on the floor in the domestics department of Walmart or that water was present on a recurring and frequent basis that would allow a conclusion that actual notice could be imputed to Walmart. As a result, Donahue has failed to demonstrate the existence of a genuine issue of material fact as to actual notice.

---

[10] The customer also could not establish constructive notice, because the door was only open for 30 seconds before he entered. *Id.* at *5.

B.  Constructive Notice

Alternatively, a plaintiff who is asserting a negligence claim may establish constructive notice by showing that a hazard or dangerous condition was present for a sufficient enough period of time that, in the exercise of reasonable care, the defendant should have discovered and remedied it. *Moultrey*, 422 A.2d at 596. There is no absolute threshold duration under Pennsylvania law for constructive notice. *See Branch v. Philadelphia Transp. Co.*, 96 A.2d 860, 862 (Pa. 1953). "The duration of the hazard is important because if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard." *Felix v. GMS, Zallie Holdings, Inc.*, 827 F. Supp. 2d 430, 437 (E.D. Pa. 2011) (quoting Restatement (Second) of Torts § 343), *aff'd*, 501 F. App'x 131 (3d Cir. 2012).

"Normally, the evaluation of these factors is within the province of the jury. However, where the evidence adduced requires the jury to resort to 'conjecture, guess or suspicion,' the determination must be made by the Court." *Craig v. Franklin Mills Assocs., L.P.*, 555 F. Supp. 2d 547, 550 (E.D. Pa. 2008) (citing *Lanni v. Pa. R.R. Co.*, 88 A.2d 887, 889 (Pa. 1952)), *aff'd sub nom. Craig v. Mills Corp.*, 350 F. App'x 714 (3d Cir. 2009).

In connection with constructive notice, courts have held that "one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." *Neve v. Insalaco's*, 771 A.2d 786, 791 (Pa. Super. 2001) "State and federal courts applying Pennsylvania law in this area have consistently required a plaintiff 'to provide some proof as to the length of time a spill existed on the floor to establish constructive notice.'" *Cox v. Wal-Mart Stores E., L.P.*, 2008 WL 4072804, at *4 (E.D. Pa. Aug. 26, 2008) (citation omitted), *aff'd*, 350 F. App'x 741 (3d Cir. 2009).

A number of factors can be considered in order to determine whether a party had constructive notice, including: "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it." *Hagan v. Caldor Dep't Stores, Inc.*, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991) (citing *Stais v. Sears, Roebuck & Co.*, 102 A.2d 204, 206 (Pa. Super), *aff'd mem.*, 106 A.2d 216 (Pa. 1954)).

Donahue asserts that Walmart had constructive notice of the presence of water on the floor. She argues that based on the absence of activity in the aisle, the surveillance footage, and the testimony in the record, a reasonable jury could conclude that the liquid had been present for more than one hour and Walmart had constructive notice of the hazard. (PRDCSF ¶ 40.) She also argues that Walmart was on constructive notice of the dangers associated with frequent customer traffic and recurring spills, and its failure to adopt a timed inspection protocol in light of known hazards constitutes a breach of its duty of care.

In *Petsmart*, a decision on which Donahue relies, the court concluded that the defendant had constructive notice of the puddle that caused the plaintiff's fall:

> The central location of the puddle of urine that Plaintiff fell on indicates that Petsmart should have discovered the hazard with reasonable diligence in a short period of time. . . While Plaintiff cannot say how long the puddle of urine was present on the floor, the record sets forth sufficient circumstantial evidence to allow a jury to conclude that it was present for enough time to create constructive notice to Defendant. Manager Reif testified that her general practice is to perform visual inspections at 9:00 AM, 1:00 PM, and 5:00 PM, each of which last approximately 15-20 minutes. Given that Plaintiff's fall occurred at around 5:50 PM, it would be reasonable for a jury to find that the puddle was there for up to 30 minutes before Plaintiff encountered it.

2023 WL 8810791, at *6.

According to Donahue, the fact that no evidence of a spill can be observed on the video for an hour before her fall permits an inference, similar to the one in *Petsmart*, that water had been on

the floor for at least an hour and Walmart took no action to remove it.

In turn, Walmart contends that Donahue has produced no evidence as to how long there may have been liquid on the floor. Donahue testified that she saw nothing on the floor before the incident and several customers walked through the aisle without incident in the hour prior to the fall without incident. Walmart also notes that there is no record evidence that shows when or if a spill occurred or that anyone saw liquid on the floor before Donahue fell.

"Courts interpreting Pennsylvania law make clear that absent any evidence of the duration of time the spill remained on the floor prior to the accident, constructive notice cannot be inferred." *Cox*, 2008 WL 4072804, at *8. *See also Toro v. Fitness Int'l LLC*, 150 A.3d 968, 977 (Pa. Super. 2016); *Bowman v. Wal-Mart Stores E., LP*, 2015 WL 568570, at *5 (E.D. Pa. Feb. 10, 2015); *Felix*, 827 F. Supp. 2d at 438.

Moreover, the Court of Appeals has rejected the attempt to demonstrate constructive notice by negative inference. In *Choi v. Costco Wholesale Corp.*, 2024 WL 658972 (3d Cir. Feb. 16, 2024), the plaintiff (Choi) slipped and fell on an "oily substance" in a Costco store. The fall was captured on a video, which also showed that, for fifteen minutes prior to his fall, nineteen individuals walked through the area, the last one walking through one minute before the incident. None of these nineteen individuals slipped, fell, or gave any indication that they lost their footing. A Costco employee was seen in the video unloading a pallet and stocking a shelf in the same aisle where Choi fell.

Choi argued that he could establish constructive notice because the video demonstrated that no one spilled anything for the fifteen minutes prior to his fall and thus the condition must have existed for at least that long. Rejecting this argument, the Court of Appeals held that:

> Choi's argument fails, however, because he asks us to speculate as to how long the oily substance was on the floor. As Choi acknowledges, the video does not reveal

a patron causing the condition, or the Costco employee taking notice of the condition. Choi contends that the <u>absence</u> of these events suggests that the condition could not have occurred in the fifteen minutes before Choi's fall, but Choi's argument only highlights that he cannot establish when the condition began. Choi assumes — rather than establishes — that the condition was on the floor prior to the start of the surveillance video. *See Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 380 n.12 (3d Cir. 1990))). Moreover, the fact that nineteen individuals safely walked through the aisle during the fifteen minutes before Choi's fall undermines Choi's argument that the oily substance was on the floor throughout this time period.

*Id.* at *3. *See also Polit-Baquero v. Walmart Stores E., L.P.*, 2024 WL 469304, at *2 (3d Cir. Feb. 7, 2024) (Walmart had no constructive notice of water on the floor when the plaintiff "points to no evidence showing how long the hazard existed."); *Hower v. Wal-Mart Stores, Inc.*, 2009 WL 1688474, at *5 (E.D. Pa. June 16, 2009) (no constructive notice because there was no evidence of how long the spill had been on the floor prior to the accident); *Read v. Sam's Club*, 2005 WL 2346112, at *2 (E.D. Pa. Sept. 23, 2005) (no constructive notice based on the facts that an employee could not recall when she performed a safety sweep of the aisle and the store failed to keep logs of safety sweeps and inspections); *Estate of Swift*, 690 A.2d at 722 (constructive notice could not be inferred based on janitorial maintenance records which indicated that the person charged with maintaining the area where the decedent fell had left the hospital property four hours before the accident).

Donahue assumes that water was on the floor for more than an hour because the video does not clearly show the occurrence of any spills during the hour preceding her fall. However, she cannot establish when the condition began.[11] That is fatal to her claim of constructive notice. As discussed in *Choi,* Donahue assumes that the spill occurred before the start of the surveillance

---

[11] As noted above, because the video does not provide a definitive view of the aisle where Donahue fell, it is possible that a spill was present but could not be seen.

video, but she cannot establish when it may have occurred. Speculation about how long the condition may have existed before the start of the surveillance video is insufficient to create a material issue of fact regarding constructive notice. In addition, there is a lack of any evidence in the record about the probable cause of any liquid on the floor and any opportunity that Walmart had to remedy it. And as reflected on the video, six customers walked through this aisle of the store without incident in the hour preceding Donahue's fall, the last two only ten minutes before its occurrence.

Thus, Donahue has failed to demonstrate a genuine issue of material fact that Walmart had constructive notice of the hazardous condition.

C.  Walmart's Inspection Protocols

Finally, Donahue seeks to establish liability based on Walmart's lack of regular inspections, which she argues could have provided notice of water on the floor prior to her fall. She points to the absence of any formal inspection policy at this store and notes that Walmart relied on an informal "clean-as-you-go" policy instead. Further, the area in which she fell was not inspected for an hour before her fall.

In support of her position, Donahue cites *Rodriguez v. Kravco Simon Co.*, 111 A.3d 1191, 1195 (Pa. Super. 2015), for the proposition that Walmart had a duty to conduct reasonable inspections to discover and remedy hazardous conditions. *But see Rivera v. CVS Pharmacy*, 2024 WL 4680033, at *6 n.6 (E.D. Pa. Nov. 5, 2024) (distinguishing *Rodriguez*, which was based on an "open question about spoliation" since the defendants failed to produce records that their employees had followed a cleaning schedule, whereas in *Rivera*, there were no spoliation issues or any indication that CVS employees failed to comply with a specific inspection policy); *McClure v. Love's Travel Stops & Country Stores*, 2023 WL 3609158, at *8 (M.D. Pa. May 23, 2023)

(same).[12]

At any rate, liability cannot be based on a store's failure to adhere to its own inspection policies or that in general, its inspection policies were inadequate. In fact, courts have rejected this argument. *See Hower*, 2009 WL 1688474, at *6 (a store's "policies are not the equivalent of its duty of care."). Such an argument "skips a step within the negligence framework. In order for Defendants to fail to exercise reasonable care with respect to a duty, Defendants must owe a duty in the first place." *Felix*, 827 F. Supp. 2d at 440. *See also Read*, 2005 WL 2346112, at *3 (factual disputes about how often the store inspected the area "are material in showing a breach of duty, [but] they become relevant only after plaintiff makes an evidentiary showing of the existence of such a duty (i.e., that the spill lingered for a sufficient period of time so that defendant should have discovered the spill), which plaintiff has not done.")

Because Donahue has failed to demonstrate that Walmart had actual or constructive notice of the presence of water on the floor of the aisle, she has failed to demonstrate that it had any duty to her. Without establishing such a duty, the Court cannot reach the issue of Walmart's alleged breach of a duty. Therefore, Donahue cannot predicate liability based on Walmart's inspection policies or their supposed inadequacy.

## V.  Conclusion

For the reasons explained above, Walmart's motion for summary judgment will be granted. An appropriate order follows.


Dated: November 13, 2025                              /s/ Patricia L. Dodge
                                                      PATRICIA L. DODGE
                                                      UNITED STATES MAGISTRATE JUDGE

---

[12] Donahue cites the *Craig* case for the proposition that the "absence of adequate and reasonable inspection procedures may give rise to constructive notice." (ECF No. 33 at 12.) *Craig* does not include this statement.